# United States Court of Appeals
# for the Federal Circuit

BSG TECH LLC,
                    *Plaintiff - Appellant*

v.

BUYSEASONS, INC., nka Liberty BSI, Inc.,
                    *Defendant - Appellee*

RAKUTEN COMMERCE, LLC,
                    *Defendant.*

Appeal from the United States District Court for the Eastern District of Texas in Case Nos. 2:16-cv-00529-RWS, 2:16-cv-00530-RWS, 2:16-cv-00532-RWS, Judge Robert W. Schroeder III

## RESPONSE BRIEF OF APPELLEE BUYSEASONS, INC.

Neil J. McNabnay
David B. Conrad
Ricardo J. Bonilla
FISH & RICHARDSON P.C.
1717 Main Street
Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070

*Attorneys for Defendant-Appellee BuySeasons, Inc. (now known as Liberty BSI, Inc.)*

September 5, 2017

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

BSG TECH LLC                    **v.**                    BUYSEASONS, INC.

Case No. _____ 17-1980 _____

## CERTIFICATE OF INTEREST

Counsel for the:

☐ (petitioner) ☐ (appellant) ☐ (respondent) ☒ (appellee) ☐ (amicus) ☐ (name of party)

BUYSEASONS, INC. (now known as Liberty BSI, Inc.)

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| BuySeasons, Inc., nka Liberty BSI, Inc. | N/A | Liberty TripAdvisor Holdings, Inc. |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

Fish & Richardson P.C.; Neil McNabnay; David Conrad; Ricardo Bonilla; Gina Kim

9/5/2017
_____
Date

/s/ David B. Conrad
_____
Signature of counsel

Please Note: All questions must be answered

David B. Conrad
_____
Printed name of counsel

cc:   Opposing Counsel _____

Reset Fields

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ...................................................................... i

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES .......................................................................... iv

STATEMENT OF RELATED CASES AND STATEMENT OF
JURISDICTION ..............................................................................................1

STATEMENT OF THE ISSUES......................................................................1

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF THE CASE AND RELEVANT FACTS .............................2

    A.    The Patents-in-Suit................................................................................ 2

    B.    The Proceedings in the Lower Court .................................................. 6

SUMMARY OF THE ARGUMENT ................................................................ 9

ARGUMENT ................................................................................................. 10

    A.    Standard of Review........................................................................... 10

    B.    The Law of Subject Matter Eligibility.............................................. 11

    C.    Step One: The Claims Are Directed to an Abstract Idea...................12

        1.    The Asserted Claims are directed to the abstract idea of
        considering historical usage information while inputting data.13

        2.    The Asserted Claims do not improve computer functionality...16

        3.    The Asserted Claims impermissibly claim a result rather than a
        specific mechanism for achieving it. ........................................ 22

        4.    In the alternative, the Asserted Claims are directed to the
        abstract idea of classifying and parameterizing information. .. 26

        5.    Both abstract ideas capture the focus of the Asserted Claims and
        are properly tethered to the language of the Asserted Claims. 28

    D.    Step Two: There Is No "Inventive Concept" ................................... 29

        1.    The independent claims do not capture an inventive way to
        consider historical usage information while inputting data..... 29

        2.    The dependent claims do not contain any inventive concept... 33

    E.    BSG Tech's Arguments Are Misplaced............................................. 35

        1.    Whether the claims result in complete preemption of all
        databases is not the correct analysis. ....................................... 35

2.    The district court properly considered BSG Tech's expert declaration. .................................................................. 36

CONCLUSION ........................................................................... 37

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.,*
  728 F.3d 1336 (Fed. Cir. 2013) ......................................................30, 31, 32

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
  838 F.3d 1253 (Fed. Cir. 2016) ...................................................... 29

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
  134 S. Ct. 2347 (2014) ...................................................................*passim*

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
  788 F.3d 1371 (Fed. Cir. 2015) ................................................... 35

*Bilski v. Kappos,*
  561 U.S. 593 (2010) ..................................................................... 11

*buySAFE, Inc. v. Google, Inc.,*
  765 F.3d 1350 (Fed. Cir. 2014) ....................................................31, 32

*Cogent Med. v. Elsevier Inc.,*
  70 F. Supp. 3d 1058 (N.D. Cal. 2014).......................................... 33

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,*
  558 F. App'x 988 (Fed. Cir. 2014) ................................................ 26, 27

*CyberSource Corp. v. Retail Decisions, Inc.,*
  654 F.3d 1366 (Fed. Cir. 2011) .................................................... 33

*Diamond v. Chakrabarty,*
  447 U.S. 303 (1980)...................................................................... 11

*Enfish, LLC v. Microsoft Corp.,*
  822 F.3d 1327 (Fed. Cir. 2016) ....................................................*passim*

*Fairchild v. Liberty Indep. Sch. Dist.,*
  597 F.3d 747 (5th Cir. 2010)......................................................... 11, 26

*Finisar Corp. v. DirecTV Grp., Inc.,*
  523 F.3d 1323 (Fed. Cir. 2008) .................................................... 25

*Gamel v. Grant Prideco, L.P.*,
625 F. App'x 690 (5th Cir. 2015) ............................................................10

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ............................................................... 11, 23

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ........................................................ 30

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016)....................................................... 35

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015) ..................................................... 22, 28

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
107 F. Supp. 3d 677 (E.D. Tex. 2015) ..........................................31

*KSR Int'l Co. v. Teleflex Inc.*,
127 S. Ct. 1727 (2007) ................................................................. 37

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) .......................................................10

*Le Roy v. Tatham*,
55 U.S. 156 (1852) ...................................................................... 11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012) ........................................................ 6, 7, 32, 36

*Netflix, Inc. v. Rovi Corp.*,
114 F. Supp. 3d 927 (N.D. Cal. 2015)........................................... 30

*O'Reilly v. Morse*,
56 U.S. 62 (1853) ...................................................................... 22

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) ............................................. 11, 35

*Regents of Univ. of Minn. v. AGA Med. Corp.*,
717 F.3d 929 (Fed. Cir. 2013) ..................................................... 37

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016) ................................................... 35

*In re TLI Commc'ns Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ...........................................................16, 23

*Triple Tree Golf, Inc. v. Nike, Inc.*,
   485 F.3d 253 (5th Cir. 2007)..................................................................10

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) .........................................................31, 32

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
   793 F.3d 1306 (Fed. Cir. 2015) ................................................... 16, 17, 32

*Visual Memory LLC v. NVIDIA Corp.*,
   No. 2016-2254, 2017 WL 3481288 (Fed. Cir. Aug. 15, 2017) .................21

## Statutes

35 U.S.C. § 101 ...................................................................................*passim*

## Other Authorities

Federal Rule of Civil Procedure 56................................................................10

Federal Circuit Rule 47.5............................................................................1

## STATEMENT OF RELATED CASES AND
## STATEMENT OF JURISDICTION

Pursuant to Federal Circuit Rule 47.5, BuySeasons affirms that the Statement of Related Cases and the Statement of Jurisdiction in BSG Tech's brief are correct.

## STATEMENT OF THE ISSUES

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The district court found that the Patents-in-Suit are directed to the abstract idea of considering historical usage information while inputting data and do not include an inventive concept beyond that idea. Did the lower court therefore properly determine that the asserted claims of the Patents-in-Suit do not claim eligible subject matter under 35 U.S.C. § 101?

## PRELIMINARY STATEMENT

Apprising a user of the way that past users have utilized a system as that user is entering data into the system is not an idea eligible for patenting. The application of this idea to a framework of conventional relational databases adds nothing to raise it above the realm of the abstract.

BSG Tech's brief raises no difficult questions regarding subject matter eligibility. Its argument on appeal reduces to its contention that the claims do not preempt every database application of the abstract idea. However, this

Court has stated time and again that complete preemption is not the test for determining the patent-eligibility of subject matter. The proper inquiry is the preemptive effect of the claims relative to the inventor's contribution, which here was nothing more than the idea of providing users with past information to guide them in adding new information to a database. The breadth of the claims is not commensurate to this contribution to the arts, and accordingly, the claims are impermissibly overbroad. Therefore, the Asserted Claims do not claim eligible subject matter, and BuySeasons respectfully requests affirmance of the ruling below.

## STATEMENT OF THE CASE AND RELEVANT FACTS

Plaintiff-Appellant BSG Tech LLC accuses Defendant-Appellee BuySeasons, Inc. (now known as Liberty BSI, Inc.) of infringing Claims 10 and 11 of the U.S. Patent No. 6,035,294 (the "'294 Patent"), Claim 9 of the U.S. Patent No. 6,195,652 (the "'652 Patent"), and Claims 1-4 of the U.S. Patent No. 6,243,699 (the "'699 Patent") (collectively, the "Asserted Claims").

### A.    THE PATENTS-IN-SUIT

The '294 Patent is entitled "Wide Access Databases and Database Systems" and is generally directed to the use of "parameters/ values/classifications . . . for use in describing [a user's] items." [Appx0038,

2

'294 Patent at Abstract] The '652 Patent is entitled "Self-Evolving Database and Method of Using Same" and is generally directed to the use of "classifications, parameters, and values . . . to describe every conceivable type of product and service, as well as such diverse types of information." [Appx0053, '652 Patent at Abstract] The '699 patent is entitled "Systems and Methods of Indexing and Retrieving Data," and is generally directed to the use of "parameters/values/classifications . . . in describing a user's items." [Appx0076, '699 Patent at Abstract]

Each of the Asserted Claims involves the abstract concept of users considering historical usage information while inputting data. The concept is simple: inform users of what categories, parameters, or values have been previously used to describe items, and they will tend to provide more useful information when adding new items. [Appx0048, '294 Patent at 3:24-46] For example, a user adding a new entry for a used Toyota truck can see that the "Make" parameter is used more often than "Manufacturer" in this category, so she adds the item with a "Make" parameter recording the value *Toyota*. Even though items are described in a free-form manner, with users choosing how to describe items rather than following pre-defined schemas, the information store would purportedly not devolve into anarchy. "What is expected to maintain general consistency throughout the system is that the

3

user can see what categories have been chosen by others . . . and will presumably want to use categories that have proven to be popular in the past." [Appx0047 at 5:21-25]

The following three claims are all of the independent claims asserted by BSG Tech. Generic computer elements on which the abstract idea is to be performed are emphasized.

> 10.     A method of indexing an item on a **database**, comprising:
>
> providing the **database** with a structure having a plurality of item classifications, parameters, and values, wherein individual parameters are independently related to individual item classifications, and individual values are independently related to individual parameters;
>
> guiding the user in selecting a specific item classification for the item from the plurality of item classifications;
>
> storing the item on the **database** as a plurality of user-selected item classification/parameter value combinations; and
>
> guiding the user in selecting at least one of (a) the parameters of the combinations by displaying relative historical usage information for a plurality of parameters previously used by other users, and (b) the values of the combinations by displaying relative historical usage information for a plurality of values previously used by other users.

[Appx0052, '294 Patent at Claim 10 (emphasis added)]

> 9.     A self-evolving **database system** having a predefined structure, comprising:
>
> a data structure that stores goods and services as combinations of item classifications, parameters, and values, wherein at least some of the classifications, parameters, or values

used to describe different items vary over time, where end users can add additional parameters without modifying the predefined structure of the **database**; and

at least one **data interface** that guides the end users in their choices of the combinations by displaying summary comparison usage information derived from the choices of previous users.

[Appx0075, '652 Patent at Claim 9 (emphasis added)]

1.    A method of indexing and retrieving data being posted by a plurality of users to **a wide area network**, comprising:

providing the users with a **mechanism** for posting the data as parametized items;

providing the users with listings of previously used parameters and previously used values for use in posting the data;

providing the users with summary comparison usage information corresponding to the previously used parameters and values for use in posting the data; and

providing subsequent users with the listings of previously used parameters and values, and corresponding summary comparison usage information for use in searching the **network** for an item of interest.

[Appx0089-90, '699 Patent at Claim 1 (emphasis added)]

In short, the independent claims are directed to the abstract idea of inputting information while a user considers information previously submitted by other users applied in the framework of a conventional database. Classifications and parameters are provided that are associated with data (i.e., items), and users may use existing parameters to associate

5

values with new items, or they may provide new parameters to items. No new technological improvement is claimed.

The dependent claims are directed to the same abstract idea applied to a conventional computer, just with varying (yet still abstract) specifics for the database framework. That is, they only claim relatively narrower possibilities of the patent-ineligible independent claims and add no patent-eligible inventive concepts.

## B.    THE PROCEEDINGS IN THE LOWER COURT

BSG Tech asserted claims 10 and 11 of the '294 patent, claim 9 of the '652 patent, and claims 1-4 of the '699 patent against BuySeasons. BuySeasons filed its motion to dismiss for failure to state a claim on June 9, 2016. [Appx000286-317] BSG Tech's response included an expert declaration. Due to its consideration of this outside material, the district court converted BuySeasons' motion to dismiss into a motion for summary judgment.

The district court issued its opinion on March 30, 2017. [Appx0001-11] It began by adopting BSG Tech's proposed constructions for three claim terms: "user," "usage information," and "predefined structure," and confirming that it had considered BSG Tech's expert declaration. The district court then applied the two-pronged *Mayo* test to determine whether the

asserted claims were directed to patent-eligible subject matter. The court found that they were not, for they "are directed to the abstract idea of considering historical usage information while inputting data." [Appx0008] The court noted that "[u]nlike the claimed idea in *Enfish*, the claimed idea here is not directed to an improvement in computer functionality, but represents a routine task that could be performed by a human." [*Id.* (internal quotations and alternations omitted)] Therefore, under the first step of the *Alice* test, the district court found that, because the claimed invention is similar to the inputting of cards into a library catalog, which "can be performed by the human mind or by using pen and paper," the Asserted Claims are "directed to an abstract idea." [*Id.* (citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)]

Under the second prong of the *Mayo* analysis, the court addressed BSG Tech's various arguments that the Asserted Claims provide an inventive concept. The court first noted that there was nothing inventive about the structure of the claimed databases "that include[] classifications, parameters and values" because "this limitation amounts to nothing more than the 'well-known concept of categorical data storage.'" [Appx0010 (citing *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014)] The court also rejected BSG Tech's argument that the limitation of

7

guiding a user's selections of parameters or values through the display of historical usage information was an inventive concept; rather, the limitation was "nothing more than an instruction to apply the abstract idea of considering historical usage information." [*Id.*] The court further found no inventive concept in any of the remaining limitations of the Asserted Claims and therefore granted BuySeasons' converted motion for summary judgment, concluding that the Asserted Claims "fall outside the scope of patentable subject matter defined by § 101." [Appx0011]

This appeal followed.

## SUMMARY OF THE ARGUMENT

The Asserted Claims are directed to an abstract idea: considering historical usage information while inputting data. The abstract idea is simply "applied" using a conventional database. The claims do not contain "something significantly more" than the abstract idea or apply this idea in an inventive or unconventional way. The claims solve no technical problem and achieve no technological improvement. Nor are the claims otherwise limited such that the claims do not disproportionately preempt all practical ways of considering historical usage information while inputting data. The use of a database adds nothing to the analysis because there are no meaningful limitations on the way that the database is drawn. The claims demonstrate a drafting effort to monopolize this abstract idea. Under long-standing Supreme Court jurisprudence, the claims are not patent-eligible.

Importantly, whether the Asserted Claims preempt *all* databases is not the appropriate analysis, despite BSG Tech's protestations to the contrary. BSG Tech merely claimed steps, or systems that performed those steps, for how one would practice this abstract idea in a conventional database environment. The decision to claim the idea itself set in a conventional database environment—and not an inventive implementation of how to accomplish the idea—is fatal to the claims. They disproportionately tie up use

of the abstract idea despite the inventor's only contribution being to claim the idea itself.

Finally, the lower court properly granted summary judgment after considering BSG Tech's expert's declaration, which was conclusory and did nothing more than parrot BSG Tech's arguments. Having found the declaration raised no genuine issue of material fact pursuant to Fed. R. Civ. P. 56(a), the lower court properly entered summary judgment of the invalidity of Asserted Claims for failure to claim patent-eligible subject matter.

## ARGUMENT

### A.    STANDARD OF REVIEW

For issues not unique to patent law, this Court applies the law of the regional circuit where the appeal would otherwise lie, which in this case is the Fifth Circuit. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 66 (Fed. Cir. 2012). Because the district court converted BuySeasons' motion to dismiss into a motion for summary judgment, the Rule 56 standard of review applies. *Gamel v. Grant Prideco, L.P.*, 625 F. App'x 690, 693 (5th Cir. 2015). The Fifth Circuit reviews a district court's grant of a motion for summary judgment *de novo*. *Triple Tree Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). A grant of summary judgment may be

affirmed "on any grounds supported by the record—including grounds different than those relied upon by the district court." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 754 (5th Cir. 2010). Patent eligibility under § 101 is an issue of law that the Court reviews *de novo. See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015).

## B.    THE LAW OF SUBJECT MATTER ELIGIBILITY

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. In addition, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are not eligible for patent protection because they are a basic tool of human innovation and a monopoly over such ideas would preempt their use in all fields of endeavor. *See Bilski v. Kappos*, 561 U.S. 593, 612 (2010). The "abstract ideas" category embodies "the longstanding rule that '[a]n idea of itself is not patentable.'" *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (quoting *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498, 507 (1874)); *see also Le Roy v. Tatham*, 55 U.S. 156, 175 (1852) ("A principle, in the abstract, is a fundamental truth; an original cause; a

motive; these cannot be patented, as no one can claim in either of them an exclusive right.").

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps: First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claims contain such an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted). Thus, transformation of an abstract idea into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72 (2012)).

## C.    STEP ONE: THE CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA

The Asserted Claims are invalid under § 101. First, the claims are directed to an abstract idea—considering historical usage information while inputting data—and abstract ideas are not eligible for patent protection. Second, the claims are broadly generic and do not contain meaningful limitations that restrict the claims to non-routine and specific applications

of the abstract idea. They amount to nothing more than the applicant's idea of considering historical usage information while inputting data.

> *1.    The Asserted Claims are directed to the abstract idea of considering historical usage information while inputting data.*

The first step of the *Alice* analysis requires determining whether the claims at issue are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. The district court correctly found that the Asserted Claims are directed to the abstract idea of "considering historical usage information while inputting data." [Appx0008]

The Asserted Claims themselves make plain that the aim of the invention is to have users consider past usage of a database—*e.g.*, inputs from previous users—while the current users enter their own information into the database. Indeed, as the district court stated, all of the Asserted Claims "recite databases or methods of indexing databases where users are guided to input items based on historical or summary usage information." [*Id.*] Specifically, each of the Asserted Claims describes the application of the same abstract idea:

| '294 Patent, Claim 10 | '652 Patent, Claim 9 | '699 Patent, Claim 1 |
|---|---|---|
| guiding the user in selecting . . . the parameters [or values] of the combinations by displaying relative | guid[ing] the end users in their choices of the combinations by displaying summary comparison usage | providing the users with summary comparison usage information corresponding to the |

| historical usage information for a plurality of parameters [or values] previously used by other users | information derived from the choices of previous users | previously used parameters and values for use in posting the data |
|---|---|---|

The remaining limitations in the Asserted Claims describe the context of the application of the abstract idea: generic databases. [*See* Appx0009]

The patents' specifications support the abstract nature of the Asserted Claims. In particular, in the "Summary of Invention" sections, the specifications describe preferred embodiments in which "the system displays information relating to the usage with which parameters [or values] have historically been employed in describing different types of items. This encourages users to be consistent in selecting parameters [or values] for both entering and searching data, while still allowing great flexibility." [Appx0048, '294 Patent at 3:34-45; Appx0086, '699 Patent at 3:40-51; *see also* Appx0068, '652 Patent at 3:49-51 ("[S]ubsequent users [are] guided in their choices by summary comparison usage information (SCUI) derived from the choices of previous users.")]

The specifications also make explicit that there are virtually no boundaries on what usage information comprises:

> ***The term 'usage' is employed herein in its broadest possible sense to include*** information relating to occurrence, absolute or relative frequency, or ***any other data which***

***indicates the extent of past usage with respect to the
various choices.***

[Appx0049, '294 Patent at 5:26-30; Appx0087, '699 Patent at 5:33-37; *see
also* Appx0070, '652 Patent at 8:27-31 (emphasis added)] Thus, even the
purportedly inventive aspect of the Asserted Claims is unbounded in its
scope, covering any conceivable historical usage information that can be
displayed to a user inputting information to the system.

The context in which this abstract idea is applied—namely,
conventional databases—does not change the outcome of the first step of the
*Alice* analysis. Indeed, this Court recognized that relational databases of the
type described in the specifications with separate, interrelating tables were
already considered "standard" years before the priority date of any of the
Patents-in-Suit. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1330
(Fed. Cir. 2016) (noting "standard 'relational'" databases were prior art to
patents at issue that claimed priority to March 1995). Moreover, the patentee
did not invent the use of classifications, parameters, and values within the
same system. [*See, e.g.*, Appx0047, '294 Patent at 2:1-21 (describing prior art
hierarchical "yellow pages" index that organizes addresses and internet
addresses (parameters/values) "for various categories" (classifications))]
The inventor's contribution, therefore, was only the idea of providing a user

with historical usage information, which neither provides a technical solution nor addresses a technical problem.

   2. *The Asserted Claims do not improve computer functionality.*

  The Asserted Claims do not claim any improvement in how computers operate within their technological limitations. As the Federal Circuit explained in *Enfish*, while a claim directed to software is not inherently abstract, it must capture a specific improvement in the functionality of the computer itself in order to be eligible for patenting. 822 F.3d at 1335-36 ("[W]e find it relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea, even at the first step of the Alice analysis."); *see also In re TLI Commc'ns Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (affirming grant of § 101 motion to dismiss where "the claims here are not directed to a specific improvement to computer functionality").

  As in the present case, the *Enfish* claims related to computer databases. However, *Enfish* did not involve patents claiming conventional relational databases, as in this case. 822 F.3d at 1330-33 (contrasting the patented "self-referential" databases with "conventional logical models" such as "the more standard 'relational' model"). Thus, what distinguished *Enfish* from cases such as *Alice* and *Versata* where the Supreme Court and the Federal

Circuit have held ineligible claims that "simply add[] conventional computer components to well-known business practices" was that the unconventional improved databases in *Enfish* resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337-38; *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015). The "self-referential" database achieved these improvements to the computer's operation by "function[ing] differently than conventional database structures" and eliminating the need to pre-configure data structures. 822 F.3d at 1337. In the *Enfish* invention, what previously required multiple database tables could now be performed using only a single database table. *Id.* at 1332-33.

The databases described in the patents-in-suit, however, function no differently from conventional database structures. All the patentee does is claim the natural effect of providing information to a user that is adding information to conventional databases—namely, "information relating to the usage with which parameters have historically been employed in describing different types of items." [Appx0048, '294 Patent at 3:35-37] Then the patentee describes displaying this "information relating to the usage with which data values have historically been used with particular parameters in describing specific types of items." [*Id.* at 3:41-43] This idea is abstract, and

not an improvement on conventional database, as indicated by the patentee's decision to describe the "preferred database according to the present invention" using a Venn diagram:



*Id.* at Fig. 1.

The patents' description of their benefits confirm that the focus of the patentee's idea is on better informing users of conventional databases such as relational databases, rather than inventing an unconventional database. That is, the purported benefit of the claimed idea is the ability for users to more quickly find information in a database, not for a database to better store or process information:

18

> It allows users to quickly and efficiently access hundreds of thousands or even millions of records, and still find only those few records that are relevant. Even more importantly, the system allows users to add data and search for items according to parameters and values in a manner that allows the entire database to evolve.

[Appx0050, '294 Patent at 10:38-48; Appx0075, '652 Patent at 17:31-41; Appx0089, '699 Patent at 10:42-52] Put another way, any perceived benefit that could be derived from the described databases comes from the quality and quantity of the information input into the databases, not from an unconventional way in which the databases themselves function on a computer. Thus, unlike *Enfish*, the databases in the asserted claims are not an improvement on a computer's functionality.

BSG Tech concedes this point in its opening brief. In attempting to describe the manner in which the purported invention improves upon conventional databases, BSG Tech states that "the claims have limitations that are intended to result in a more effective database that encourage [sic] users to be consistent in selecting parameters and data values for entering and searching data, while allowing flexibility for the user." [Blue Br. at 53 (internal citations removed)] It goes on to say that "[t]his ***improves the***

**quality of item information input into the database** [and] the organization of item information in the database." [*Id.* (emphasis added)[1]]

Based upon the admissions above, BSG Tech ultimately draws the errant conclusion that the "functionality of the database" is improved. *Id.* However, the "functionality" alleged to be improved by BSG Tech is clearly distinct from that sought by this Court in its test for an improvement in computer functionality because, while the purported invention might enhance a user's experience by controlling the quality of information input into a database, it does not change on the **actual functioning** of a computer. One could apply the same idea to handwritten records rather than a computer database and achieve the same benefit of a more consistently organized information store.

BSG Tech does not and cannot point to any improvement in memory requirements, search times, or any other manner in which a computer operates that results from facilitating a user's consideration of historical usage information while inputting data. Thus, BSG Tech's statements

---

[1] Appellant's alleged expert, James Barnett, whose declaration is attached as Exhibit D to BSG Tech's Opposition to BuySeasons' Motion to Dismiss for Failure to State a Claim [Appx000427-76], similarly concedes the same point, as he includes language nearly identical to Appellant's from its opening brief. [*See* Appx000530, Appx000538, Appx000542 ("The invention [of the Asserted Claims] is intended to improve the quality of item information into the database . . . .")]

support the fact that any benefit that might stem from the purported invention is not the result of a technological advancement, but rather, quality control of information.

Comparing the Asserted Claims to the claims at issue in this Court's recent decision in *Visual Memory* further supports the abstract nature of the Asserted Claims. In that case, the patent at issue claimed "a memory system with programmable operational characteristics [that] permit[ted] different types of processors to be installed with the subject memory system without significantly compromising their individual performance." *Visual Memory LLC v. NVIDIA Corp.*, No. 2016-2254, 2017 WL 3481288, at *4 (Fed. Cir. Aug. 15, 2017) (internal quotations omitted). The Court held that the claims were directed to a "specific asserted improvement in computer capabilities— the use of programmable operational characteristics that are configurable based on the type of processor." *Id.* (internal quotations omitted). The claimed invention was thus directed to a particular improvement to computer technology, not an abstract idea for which computer technology is used as a tool.

In this case, the claims are not "directed to a technological improvement." *Id.* Rather, as stated above, the claims are directed to an improvement in the information a user has at her disposal when entering

information into a database. Any potential benefit that might be derived from the purported invention comes from providing past usage information to a user inputting data so that she might make an informed, consistent choice, resulting in an improvement of quality of information within a database, but not the functioning of the database itself.

> 3.  *The Asserted Claims impermissibly claim a result rather than a specific mechanism for achieving it.*

Any individual who conceives of a new database mechanism that achieves the same result claimed by the Asserted Claims would infringe the claims because it is the result that is claimed here, not a new mechanism for achieving the result. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015); *O'Reilly v. Morse*, 56 U.S. 62, 113 (1853) (finding claim for electromagnetic telegraph ineligible where, in the claim, "it matters not by what process or machinery the result is accomplished"). Without any meaningful restrictions, the claimed idea is abstract and thus patent ineligible.

The claims recite requirements for a conventional database having conventional memory and software to implement these tasks, but they go no further. [*See, e.g.*, Appx0052, '294 Patent at Claim 10 ("A method of indexing an item on a database . . ."); Appx0075, '652 Patent at Claim 9 ("A self-evolving database system having a predefined structure . . .")] All computers

have databases and necessarily store data in records in the databases during use. *See, e.g.*, *In re TLI Commc'ns*, 823 F.3d at 612 (finding that storing data in computer memory is a generic computer function and therefore unpatentable). Thus, the claimed process is just as undeserving of protection as the algorithm found patent-ineligible in *Benson*, which also required that a computer perform the algorithm but added nothing more (i.e., patentable) to the algorithm. *See Benson*, 409 U.S. at 65.

The Supreme Court has criticized attempts to patent ideas like this when they disproportionately claim such a sweeping scope. In *Benson*, the patentee sought to claim a method of programming a general-purpose digital computer to convert signals from binary-coded decimal (BCD) form into pure binary form. *Id.* The Court stated that the claim was "so abstract and sweeping as to cover both known and unknown uses of the BCD to pure binary conversion," such that end uses may vary from "the operation of a train, to verification of drivers' licenses, to researching the law books for precedents." *Id.* at 68.

In this case, the claimed idea is also sweepingly broad, as the abstract idea of considering historical usage information while inputting data is pervasive in daily life. Any person reviewing past usage of a system while adding information to it would conceivably utilize the claimed method.

Claim 9 of the '652 patent, for example, maps to the analogous process of cataloging books in a library. Cataloging library books is often accomplished by preparing library cards to classify and describe the books. On the cards, a person could use a number of "classifications, parameters, or values" to "describe different items." Classifications may include genre (e.g., "Law/Intellectual Property"), type (e.g., "Treatise"), author (e.g., "Donald Chisum"), and title (e.g., "Chisum on Patents"). The "combinations of item classifications, parameters, and values" may "vary over time, where end users can add additional parameters without modifying the predefined structure of the database"—i.e., a person may later decide to add to a card "copyright date (2015)" for the newest edition of a categorized treatise from Donald Chisum. Claim 9 additionally recites "one data interface that guides the end users in their choices of the combinations by displaying summary comparison usage information derived from the choices of previous users." In the library analogy, the "summary comparison usage information" could be a master list of all books that have already been cataloged. A second person may thus refer to the "summary comparison usage information" when cataloging the new books. The second person, for example, may read the library cards and choose the same "parameter" of "type" to describe a new treatise instead of picking a new word, like, "subgenre."

The history of considering historical usage information while inputting data dates back to at least the 1800s and the establishment of one of the oldest libraries in the country. *See* LIBRARY OF CONGRESS, HISTORY OF THE LIBRARY, https://www.loc.gov/about/history-of-the-library/ (last visited Aug. 25, 2017); *see also Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1331 (Fed. Cir. 2008) (making reference to the "card catalog system" and the "library's collection of books" at the "Library of Congress system[]"). The Library of Congress, as with many other libraries, catalogs each book with extensive classifications, similar to the claim limitation "combinations of item classifications, parameters, and values." The concept of cataloging was thus known and conventional long before the existence of computers, databases, or the Internet. The collections of the old catalog cards, by analogy, are comparable to the "summary comparison usage information" in the asserted claims. Likewise, "add[ing] additional parameters" has long been practiced by the libraries—a user could submit a "classification proposal form" to propose a new catalog classification. *See* LIBRARY OF CONGRESS, LC CLASSIFICATION PROPOSAL FORM, https://www.loc.gov/catdir/cpso/classproposalformnew.pdf (last visited Aug. 25, 2017).

In sum, because the Asserted Claims do no more than encompass an abstract idea for considering historical usage information while inputting data, the claims are not patent-eligible.

> ### 4.    In the alternative, the Asserted Claims are directed to the abstract idea of classifying and parameterizing information.

In the event that this Court does not find that the Asserted Claims are directed to the abstract idea of considering historical usage information while inputting data, as the lower court did, the Court should still find that the Asserted Claims are directed to an alternative abstract idea: classifying and parameterizing information. *Fairchild*, 597 F.3d at 754 (holding a grant of summary judgment may be affirmed "on any grounds supported by the record—including grounds different than those relied upon by the district court").

As BuySeasons argued below, the claims embody an approach to classifying and parameterizing information—an abstract idea ineligible for patent protection. This abstract idea is self-evident after removing the generic computer terms to reveal the bare idea. Importantly, even before the Supreme Court decided *Alice*, the Federal Circuit found a similar patent invalid in *Cyberfone*. In that case, the patent covered steps for classifying information: "obtaining data, 'exploding' the data, i.e., separating it into

component parts, and sending those parts to different destinations." 558 F. App'x at 990. The Court held that the claims were thus directed to the concept of classifying information, which was an abstract idea:

> Like protecting against risk, using categories to organize, store, and transmit information is well-established. ***Here, the well-known concept of categorical data storage, i.e., the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible.***

*Id.* at 992 (emphasis added). Similarly, the Asserted Patents claim the patent-ineligible concept of classifying and parameterizing information.

The applicant's idea goes like this: First, information is stored in the traditional sense—by hierarchical classifications and by parameters with values. For example, "bananas" may have been classified as "foods/fruits/bananas." A user may have added the parameters "average bunch size," or "importer." She may have also added the value "golden" to a "color" parameter.

The claimed idea then provides users with a list of previously-used parameters for use in classifying new items of interest. The users are also provided with information regarding how the parameters have been used to describe the items in the past, along with affording users the opportunity to submit new parameters for the items. Users are then "guided" to select an

item they wish to retrieve or properly index an item within the parameterized structure. These steps are the routine tasks that have been performed conventionally by people for ages to classify information (and search for classified information). The Asserted Claims are not directed to a specific application of the idea, as the claims contain no meaningful restrictions on how to implement the idea. *See Internet Patents*, 790 F.3d at 1348 (affirming invalidity where the claim "contains no restriction on how the result is accomplished" and where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation").

> 5. *Both abstract ideas capture the focus of the Asserted Claims and are properly tethered to the language of the Asserted Claims.*

BSG Tech argues in its opening brief that both the abstract idea of "considering historical usage information while inputting data" and "classifying and parameterizing information" are inapplicable because they fail to take into account certain allegedly "specific [database] structures and functions." [Blue Br. at 43] While BuySeasons disagrees that the structures and functions BSG Tech cites are "specific," BSG Tech's assertion that the abstract ideas fail to take into account those structures and functions highlights BSG Tech's fundamental misunderstanding of the analysis required under § 101. The distillation of claims to their underlying abstract

ideas is not meant to be a lossless exercise, such that the expression of the abstract idea captures every single limitation of the claims that would be required to prove infringement.  Rather, the purpose of step one of the *Alice* inquiry is to determine the focus of the claims, or the concept to which the claims are "directed." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter.") (quoting *Elec. Power Grp.*, 830 F.3d at 1354). Thus, the purported faults that BSG Tech identified in the abstract ideas are misplaced.

### D.    STEP TWO: THERE IS NO "INVENTIVE CONCEPT"

> *1.    The independent claims do not capture an inventive way to consider historical usage information while inputting data.*

The Asserted Claims do not recite meaningful limitations that would render them patent-eligible. The claims recite only a general purpose computer without the use of any inventive, special-purpose hardware or software. The '652 Patent's specification even explicitly states that "***[g]eneral purpose computers such as PCs, mid-size, or even larger computers can be used***, and such computers preferably use ***standard operating systems*** such as UNIX or NT." [Appx0068, '652

Patent at 4:10-13 (emphasis added)] The claims' use of terms such as "database," "interface," or "wide area network" does not save them from patent ineligibility.

Other than the "wide area network" claims of the '699 Patent, all of the Asserted Claims are tied to a generic database. Tying an otherwise abstract idea to a database, however, is short of an "inventive concept." *Alice*, 134 S. Ct. at 2360 (finding database claims ineligible because "the system claims are no different from the method claims in substance" and there is no inventive concept in a "data processing system"); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) (finding database claims patent ineligible because the claims "only contain generalized software components arranged to implement an abstract concept on a computer"); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1371 (Fed. Cir. 2015) (affirming patent-ineligible findings because the claims recite "the use of conventional computer components, such as a database and processors, operating in a conventional manner"); *Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 946-47 (N.D. Cal. 2015) ("A 'database' is no different from a generic computer.").

The database recited in the claims is as generic as can be. The so-called "data structure" in Claim 9 of the '652 Patent, for example, "stores goods and

services." The information stored is of no unique import either. The organization of the stored information—"as combinations of item classifications, parameters, and values"—is exactly how a person would write down the descriptions of an item, like the book in the library card catalog analogy described above. In other words, the claims' recitation of the database adds no more to the abstract idea than the storage ability of a generic database. *See Kroy IP Holdings, LLC v. Safeway, Inc.*, 107 F. Supp. 3d 677, 694 (E.D. Tex. 2015) ("[A]s in *Ultramercial*, *Content Extraction*, *buySAFE*, *Accenture*, *Bancorp* and *Cybersource*, the computers in the claimed system and methods simply perform tasks that could be performed by a human if the scale of the incentive program were small and there were no premium on the speed and efficiency that are typically offered by generic computers.").

Finally, the requirement of a "wide area network" in the claims of the '699 Patent does not save those claims from patent ineligibility. Claim 1 of the '699 Patent purports to claim the "posting" of an item's "parameters" "to a wide area network." The only "wide area network" described in the '699 Patent is the Internet. [*See* Appx0085, '699 Patent at 1:20-21 ("[T]he Internet is used merely as an example of a wide access network.")] The Federal Circuit has ruled that the "use of the Internet does not transform an

otherwise abstract idea into patent-eligible subject matter." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014) (rejecting the argument that the abstract idea "was previously unknown and never employed on the Internet before"); *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014) (affirming patent-ineligible finding on claims that "describes a well-known, and widely-understood concept[] . . . []and then applied that concept using conventional computer technology and the Internet"); *Versata*, 793 F.3d at 1333 (summarizing *Ultramercial* and *buySAFE* as holding that "invok[ing] the Internet" or "network" does not render a claim patent-eligible).

These patent claims are not rendered patent-eligible by reciting an abstract idea and adding limitations that merely reflect routine, conventional activity of those who work in the field. *See Mayo*, 566 U.S. at 71-72. "Something more" is required. *Alice*, 134 S. Ct. at 2354. And even if one or more of the steps refer to computer components, or if the specification describes specific computer machinery, their presence does not alter the analysis because they do not add meaningful limitations to the claims. *See Accenture*, 728 F.3d at 1345 (holding claims patent-ineligible even when the specification "contains very detailed software implementation guidelines" because "the system claims themselves only contain generalized software

components arranged to implement an abstract concept on a computer")
(internal citation omitted).

As these examples indicate, "the basic character of a process claim
drawn to an abstract idea is not changed by claiming only its performance by
computers, or by claiming the process embodied in program instructions on
a computer readable medium." *CyberSource*, 654 F.3d at 1375. Here, the
claimed invention of using a database, interface, or wide area network to
classify and parameterize information "merely automates what was
previously done manually." *Cogent Med. v. Elsevier Inc.*, 70 F. Supp. 3d
1058, 1064 (N.D. Cal. 2014).

Because the independent claims do not have meaningful limitations
that restrict the claims to a non-routine and specific application of an
abstract idea, the independent claims should be held invalid under § 101. *See
Alice*, 134 S. Ct. at 2359-60.

2.    *The dependent claims do not contain any inventive concept.*

The dependent claims do not recite patent-eligible subject matter for
the same reasons discussed above. The dependent claims do nothing more
than explain some relatively narrower possibilities of what the overly broad
independent claims could cover. None of the dependent claims add any
inventive concept sufficient to confer patent eligibility:

| '294 Patent | |
|---|---|
| **Dependent Claim** | **Conventional Functionality or Generic Description** |
| 11. The method of claim 10 further comprising: guiding the user in selecting the parameters of the combinations by displaying relative historical usage information for a plurality of parameters previously used by other users with respect to the specific item classification; and guiding the user in selecting the values of the combinations by displaying relative historical usage information for a plurality of values previously used by other users with respect to corresponding item classifications and parameters. | Displaying to the user how others have chosen the parameters; and displaying to the user the values for the existing parameters. |

| '699 Patent | |
|---|---|
| **Dependent Claim** | **Conventional Functionality or Generic Description** |
| 2. The method of claim 1 in which the users can add a new parameter to the previously used parameters. | The user can add a new parameter. |
| 3. The method of claim 1 in which the users can add a new value to the previously used values. | The user can add a new value. |
| 4. The method of claim 1 further comprising providing the users with a classification system for use in posting the data. | Providing the user with the currently available classifications. |

These purported limitations do not provide any meaningful limits on the claims. Indeed, the dependent claims hardly impose any new limitation at all—not a single dependent claim contains anything new besides what the independent claims have already recited. These claims are thus still an

improper attempt to patent the fundamental concept of considering historical usage information while inputting data without further contribution to the existing body of scientific or technological knowledge.

### E.   BSG TECH'S ARGUMENTS ARE MISPLACED

#### 1.   *Whether the claims result in complete preemption of all databases is not the correct analysis.*

Throughout its opening brief, BSG Tech argues that the Asserted Claims are not invalid for being directed to patent-ineligible subject matter because they allegedly do not preempt all databases. [*See, e.g.*, Blue Br. at 43] However, this Court has repeatedly stated that complete preemption is not the relevant test. *See Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) (stating that "[w]hile preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility"); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1150 (Fed. Cir. 2016) ("Synopsys' argument that the Asserted Claims do not preempt all conversions from functional descriptions of logic circuits to hardware component descriptions of logic circuits likewise misses the mark.") (alterations, internal citations, and internal quotations omitted); *OIP Techs.*, 788 F.3d at 1362-63 ("[T]hat the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do not make them any less abstract."); *Intellectual*

*Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1320-21 (Fed. Cir. 2016) ("A narrow claim directed to an abstract idea, however, is not necessarily patent-eligible . . . ."). Moreover, as explained above, any database structure or function that might be included in the Asserted Claims amounts to no more than "well-understood, routine, conventional activity already engaged in by the scientific community . . . [which] when viewed as a whole, add nothing significant beyond the sum of their parts taken separately." *Mayo*, 566 U.S. at 79-80. Thus, the Asserted Claims' alleged failure to preempt all databases is not dispositive of the § 101 inquiry at hand. As explained above, their preemptive effect is disproportionate to the inventor's contribution, and under that correct inquiry, they are not patent-eligible.

> ### 2.    *The district court properly considered BSG Tech's expert declaration.*

BSG Tech's repeated arguments that its expert's declaration proves that the Asserted Claims "are distinguishable from the conventional prior art databases" are similarly misplaced. Primarily, the district court "considered the Barnett Declaration" and properly arrived at the conclusion that the databases described in the Asserted Claims are generic. [*See* Appx0010] Put another way, "[n]othing in the declaration[] . . . prevented the District Court from reaching the careful conclusions underlying its order for summary

judgment in this case." *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1745-46 (2007).

Additionally, the district court properly rejected relying upon the Barnett Declaration, as the entirety of the declaration amounted to bare conclusions supported by no explanation or reasoning. As this Court has stated, "[c]onclusory expert assertions cannot raise triable issues of material fact on summary judgment." *Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 941 (Fed. Cir. 2013). Therefore, the district court properly granted summary judgment that the Asserted Claims are invalid for being directed to the abstract idea of considering historical usage information while inputting data where BSG Tech's expert's declaration failed to raise any genuine issue of material fact.

## CONCLUSION

For these reasons, respectfully, this Court should affirm the judgment of the district court.

Dated: September 5, 2017       Respectfully submitted,

FISH & RICHARDSON P.C.

By:    */s/ David B. Conrad*
       Neil J. McNabnay
       David B. Conrad
       Ricardo J. Bonilla
       1717 Main Street
       Suite 5000
       Dallas, TX 75201
       Phone: 214-747-5070

*Attorneys for Defendant-Appellee BuySeasons, Inc. (now known as Liberty BSI, Inc.)*

38

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(A), because it contains 7,760 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14 Point Georgia.

Dated: September 5, 2017               Respectfully submitted,

                                       FISH & RICHARDSON P.C.

                                       By:     */s/ David B. Conrad*
                                               David B. Conrad

                                       *Attorney for Defendant-Appellee*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on    September 5, 2017
by:

☐ U.S. Mail

☐ Fax

☐ Hand

☒ Electronic Means (by E-mail or CM/ECF)

David B. Conrad                                              /s/ David B. Conrad

Name of Counsel                                             Signature of Counsel

| | |
|---|---|
| Law Firm | Fish & Richardson |
| Address | 1717 Main Street, Suite 5000 |
| City, State, Zip | Dallas, Texas 75201 |
| Telephone Number | 214-747-5070 |
| Fax Number | 214-747-2091 |
| E-Mail Address | conrad@fr.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields